Thank you. May it please the Court and Council, I'm Jason Wood, attorney for the appellants in this case, the School of Students and Patrons, Zeyen Wood et al. It is a real pleasure and an honor to be here before you today. I would like to invite the Chief Justice of the United States, Justice Franklin Delano Roosevelt. Democracy cannot succeed unless those who express their choice are prepared to choose wisely. The real safeguard of democracy, therefore, is education. Now, this profound truth is enshrined in the Idaho Constitution, Article 9, Section 1, which states, The stability of a Republican form of government, depending mainly upon the intelligence of the people, it shall be the duty of the Legislature of Idaho to establish and maintain a general, uniform, and thorough system of public, free, common schools. The Idaho Supreme Court, twice, and certainly most carefully in the Paulson decision, Paulson v. Minidoka County School District, construed this provision as creating an individual, enforceable right of Idaho residents to attend common schools. That was a phrase that was used by, I think it began at the time of Horace Mann, back in the 1800s, when the public school movement first began. Common school means public school, at the public's expense, that anyone could attend, and to receive the entire product and necessary incidence of such schooling. So, it wasn't enough that the school, in general, be at no cost to the student, but its necessary incidence and all products of that common school must be at no cost to the student or their parents, but must instead be at public expense. Now, this case is about the Idaho public school system's betrayal of that solemn constitutional duty, and whether or not there is a remedy for the violation of that separate, individual, enforceable right that the Idaho Supreme Court has identified in this case. Let me ask you a question. Is it possible for a school-aged child in Idaho to enroll in classes so that they would never incur a fee throughout their high school career? I do not believe so. As currently as it exists, I don't believe that there's, there certainly are avenues by which a student can apply to their local school district or school for waiver of certain fees, but there's no guarantee that they will be waived. And the, I'm sorry, go ahead, if the court has a question. No, no, I just, it's not possible for them to take courses all through high school that don't have a fee attached to it. You know, I can't answer that. I really can't answer if that's, if it's possible to actually graduate, for example. In this case, we're talking about high school, and some of our related cases, we're dealing with kindergartens and elementary schools. But in this case, we're talking about high schools, and I, there are certain requirements, and those requirements mandated by the legislature and by the Department of Education of the state of Idaho require certain core courses and that carry credits with them. But I don't believe, I would be speculating here, but given the nature of what's happened in this case. Then does, how does that affect your case? Well. Because they would be getting the free public education that you're arguing. The focus here, I, and this has been an issue throughout this case, and the related cases, is, is it relevant whether or not courses that are, that the, that students take, does it matter whether or not those courses are mandatory? Are they compulsory in order for them, for example, to graduate, in order to qualify for the, the free school provision of the Idaho Constitution? And as we've outlined repeatedly below, and I believe to, to a certain extent here, address that question, that, that's not the inquiry. The Idaho Supreme Court has not, has never focused upon that as the requirement. Indeed, in the Paulson case, the Idaho Supreme Court indicated that, that the entire product. So there were two issues in that case. There was the textbook. So these graduating high school students, they had school fees, half of which school fees were, went towards textbooks. And the Idaho Supreme Court in Paulson said, that is a necessary incident of an education. That's like teacher salaries. Well, that, you know, that really goes to what's an education. And there have been a number of cases brought in states around the country as to what's a basic education. And doesn't it partly depend on your definition of, if you establish public free common schools, school is established. Now the question is, are you giving a free education? But that doesn't mean everything, right? That's true. Does it include lunch? No, I don't believe it does. Why not? Got to eat. That's true. But it's not, and the focus here, again, in any 14th Amendment case, whether you're talking about a takings clause or a due process clause, is the property interest created by state law. So the focus is on what does Idaho state law, what does the Constitution say about that, and what does the Idaho Supreme Court say about the Constitution as it bears on that question. And the Supreme Court in Paulson answered that question by, in various ways, not the most, not in the clearest ways, but used examples, and those examples were extracurricular activities. Those extracurricular activities such as, and it gave two examples, and that was social activities and sporting events. So if you're going to spectate or go to a dance, for example, those are extracurricular activities the school can charge for them. And we concede that that's the case. And, in fact, the court also identified certain consumable things like pencils and erasers that might not qualify as part of the free education requirement. Different kind of fees that are charged here. But Zan, Mr. Zan, is talking about basically optional fees related mostly to the band, right? One of the students, there was a band. Right. So it's not that the student can enroll in the band for free, correct, in general? Take band class at school. I think that the fee that we're talking about here was associated with, if I'm not… Travel beyond the classroom. That's correct. So that's why I'm asking, you know, you have to figure out what's an education, what's a free and basic education. And if you can take band class in school, you can take music class. Now, the question is, is it part of a basic education to go on an extra trip or to get a certain uniform or that sort of thing? That is definitely a fair question. That particular course, I think, would be more on the periphery of the courses that we're talking about. I'm just looking at the allegations, so trying to understand what's the size of the box. I mean, what's the shape of the free education box? Well, that, I think, is the most difficult probably of those. And there was an aerobics class as well that might be more difficult. But here there are academic science classes that are core curriculum defined by the state of Idaho as core curriculum that you have to take in order to graduate. And those courses carry a fee. And if you do not pay those fees upon registration before class starts, you don't get to go to the camp. Is that true? I mean, help me here, because you could take a science class where you didn't have to pay a fee. Could you? That I don't know. All I know is that these people could. But if you could, see, it seems to me you have a lot of, and understandably, I don't know. But isn't that the heart of the question? Well, I don't think so. And the reason is because if that were the case, then what would be the basic curriculum? If there is a necessary course that is required and they charge a fee for it, then how can that not be at the very basis of the requirement of a free education? And correspondingly, if you have to take other courses that the state don't require, so the state has a handful of core requirements that carry credits. And there are 87 that are required to graduate, which are larger. And so the other courses that you use to fulfill your graduation credits are called electives. That doesn't mean that they're optional in a constitutionally significant sense. You still have to take classes that carry those credits so that you can graduate. And for that reason, we believe that that is the, that's the touchstone of the analysis is, does it carry a credit towards graduation that counts towards the graduation? So, I mean, you keep pointing to Paulson, but Paulson seems to be, you know, potentially distinguishable because that involved a transcript. And a transcript does seem intimately related to the completion of high school. But I'm just not sure that the same can be said of an aerobics course or of a certain special, you know, band type of course when you can still graduate by taking another. Your Honor, that is a perfectly reasonable argument. And certainly that's one that my learned counsel has raised. That, again, is on, is more on the periphery of what we're talking about. But when you're talking about physical sciences and humanities of the type that we have identified in our complaint that are mandatory core academic courses that you have to take in order to graduate and they charge fees for those. Then how is that not in violation of the state's constitution's requirement that it be free? Well, but you agree that not all science courses you have to, you have to pay for all science courses. Not necessarily. That's correct. Okay. I don't know. But my answer is I don't know whether that's the case or not. And so I suppose the question is whether or not can you fulfill that credit in some other manner in a course that does not carry a charge. Correct. And in this case, the answer is no, you can't with regard to these particular core requirements. I believe that if it is a core course, then it means it's one that the student must take and graduate in order to graduate. And that goes really to the heart of our argument. Some of these other charges might be more, the answer might be less clear. But I believe those are certainly clear. Then there's the issue of lockers and locker fees. I'm 55 years old and I still remember lugging around, you know, just lugging my books, my textbooks from one class to the locker itself. If I didn't have that locker and I had to lug all my books around all day and then take them home, that's a Herculean task for a lot of students. And under Paulson, I believe that's clearly one of those fixed costs like the building or teacher salaries or even like a transcript that are necessary incidents to. A school locker is part of the product and a necessary incident to an education just like the building is. So, counsel, let me just jump in here because I'm trying to understand. I understand the arguments you're making, like what is required under Idaho law and where I'm having the trouble. So help me here is what makes it a taking? Because when I think of a taking, I think of I own a piece of property that the government has done something that has spoiled the value of it. And that property I could sell. What is the property here that I own? I can sell. I can trade. What is it here? Excellent question. Our answer to that is their money. That money is tied to, intimately tied to the right to an education. As the case has developed, I think it's become pretty clear that this, although we believe that this case states a takings claim, it more appropriately fits within the illegal exaction claims that we've, in our reply brief, we've identified. In a takings claim situation, we believe the reason that this is a taking is money is property. It's intangible property, but it's property that can be held in your hand. It can be transferred, conveyed. You can put it in a bank account, write checks on it. You can do all kinds of things with it. But you agree that it's intertwined with the right to education. That's true. And we believe that actually strengthens the argument. And the reason that it strengthens the argument is that the provision, the constitutional provision in the State of Idaho's Constitution, it identifies, and it's an extremely rare situation that I don't know that I've encountered before in a takings context. It expressly states in the Idaho State Constitution that money cannot be taken in this particular circumstance for this particular public use. How do you then, I guess I'm trying to figure out, assuming you do have a vested property right in a free education arising from the Constitution in Idaho, I'm trying to figure out how can you allege that the taking of your money was for public use and without just compensation? It is an unusual case. And so the majority of the takings cases that I'm sure you see, at least that I've seen published, do deal with property land use issues, that kind of thing. But there are cases. And we, you know, the Coons case, for example, it was related, the U.S. Supreme Court 2000 case, 2013 case, that was a money case. So it had to do with some land issues, but the money, the issue was whether or not the money taken that was required by the municipality to be development, whether that money was property. And the court, the U.S. Supreme Court said yes, money is property within the meaning of the takings clause. It is, but what we're talking about is this education. It seems to me that if you didn't, if you weren't trying to get money, but you were trying to really challenge the heart of the issue, which is what is the shape of a system of free public education and get a declaratory judgment as to that under the Idaho Constitution, that that would be an appropriate claim. But I'm really having trouble with giving a student or parent or guardian property rights. See, that's, I mean, I feel like there's a big gap there between the Constitution, because you're really trying, in effect, you're bringing it under both the federal and the state constitution, correct? That's correct. But you could bring, potentially, a good state case under the state constitution if you didn't try the property. Maybe you could use exaction, but if you weren't doing the federal takings, correct? I suppose that's debatable. I mean, my colleague has argued strenuously that there is no cause of action under Idaho law, under its equivalent of due process or takings clauses or any other avenue that we've raised. And so it's possible the federal might be our only avenue. But our position here is that, and I think this is where Judge Tallman got it wrong, is that he focused solely upon the education aspect of it. The Idaho legislature has done this. The Department passed these laws to narrow the scope of the Idaho educational article, et cetera, et cetera. But the question here is not, and what we're challenging here, is not that this education was deprived. So it would be a different circumstance if the appellants were, and we have other cases in state court right now, where the claimants couldn't afford the fees, and so they didn't attend the class and therefore were deprived of the education they were entitled to. That's not what we're claiming here. What we're claiming is that they got their education, but they were unconstitutionally exacted. They had that money exacted. I understand your claim. And the cases that we cited in our supplemental letter that we submitted a couple of days ago, I think, helped to clarify that. And that is, it's not enough just to have some sort of prospective relief in order to satisfy due process. But why isn't that more like a user fee than a taking? Well, because I have been unable to find any user fee case anywhere, and I'm not the greatest. There may be some out there. But I think the distinguishing feature here that none of the other user fee cases have, and what makes this an illegal exaction is that we have a specific constitutional right that says that renders unconstitutional any effort to take money for attending a common school. Now, whether or not it's a violation of that, you know, whether or not there's an actual violation is a separate question. But if there is a violation of that requirement, then it is by definition both due process violation and a taking because it's for public use. You're out of time. I'll give you a minute for rebuttal. Thank you, Your Honor. I appreciate that. May it please the Court, my name is James Stoll, and I represent the Appellee's Bonneville School District, Pocatello-Chubbuck School District, and we respectfully ask this court to affirm the district court's grant summary judgment. I'm going to touch on some of the questions you guys have raised. A little bit out of order, but essentially under the Idaho Constitution, the district court correctly determined that appellants have not met their burden of showing vested property interests and specific educational benefits under the Idaho Constitution. And to establish a claim under the Takings Clause, appellants must demonstrate a constitutionally protected interest granted in state law, traditional property principles, and Supreme Court precedent. And while a person's interest in a governmental benefit may qualify as a property for due process purposes, it must be sufficiently legitimate and certain to support a takings claim. Appellants first allege that a property interest based on a general entitlement to a free public education system under the Idaho Constitution, and they cite Article 9, Section 1 of the Idaho Constitution that places a duty on the legislature to establish a system of free common schools. And the Idaho Supreme Court in Thompson and Enelking interpreted this duty as a mandate for the state, via the legislature, to institute a complete and uniform public education system. The legislature has delegated this responsibility to the Board of Education, which sets mandatory curriculum standards for each grade level. And moreover, the statutory requirements compel school districts to offer certain grade level courses. Now, turning to Paulson, the Idaho Supreme Court clarified the limits on this duty. The case involved a school district withholding academic transcripts from a student who hadn't paid the fee assessed to the entire student body for extracurricular activities they did not participate in. The court deemed the withholding unconstitutional in distinguishing between the constitutional user fees paid voluntarily by participants and unconstitutional fees imposed unfairly on non-participants. It emphasized that courses offered outside of or in addition to mandatory minimums should be financed by those opting to participate voluntarily. Appellants opted to participate voluntarily in courses attached with fees and goods and services unconnected to a common school career. Goods purchased at the Health Occupational Student Association store, such as a sweatshirt, are not tied to class credit and are optional.  Technical certification courses are optional. Appellants could receive a common school career without these courses and services. Many students do not exercise such options that are made available. The question that was asked of your colleague was, can you go to high school and take all the courses you need to take without paying anything extra and then graduate? Yeah, and that's the answer that I just gave. That's absolutely true, Your Honor. You can. Many students don't ever have to pay a fee to go to anything. It's the problem that has arisen in this is that what they've asked to be reimbursed for are these extra. I think the argument that Mr. Wood, I think, is making is that the courses at issue here could be counted towards the graduation credit requirement. And so does that, my question for you, if that is the case, because I think it may be the case for at least a couple of the classes identified, maybe the early education course, the farm tech course. OK, so the answer is no, Your Honor. It's not dispositive that the patrons receive some credit towards graduation because there was a free path to receive the same course credits. And by definition, the courses at issue were offered beyond or in addition to the free. I guess the question is, and maybe I'm not understanding your statement right there, at least one or two of the courses, I think, that are in question here could go towards graduation credit. Correct? That is correct. All right, and so that would seem to distinguish the fees here from fees charged for typical extracurricular activities like clubs and sports, which is what the Idaho Supreme Court commented on in Paulson, correct? Partly. Help me with that. Yeah, so I think after Paulson, I think you have to look at what the legislature did, and they adopted 33.512, subsection 12, which specifically says that services outside of or in addition to the regular academic courses or curriculum of a school are expressly not considered property interests at all. And I think that's where the distinction lies here, is that there is, I think it's an Enelking case, where the court specifically said that when you're looking at what is the common school system, it's that you can take a certain section of courses that everybody can take and that you can move from one community to the other and expect that those same courses are going to be available where you're at so that everybody's under a common core group of classes that anybody can take and graduate from high school. If you go to different school districts, you see different extracurriculars that are offered. Kindergarten, for one, is an option. It's not offered in every single school district. And so you don't get credit for kindergarten. It's not part of the overall scheme of what is required to graduate high school. I guess what I thought Judge McGeeh was asking, if you have a course, and let's take this out of the early childhood education context, but if you have a course for which you can get credit toward graduation, say, in the high school, but there's a fee to take that course, I think that's what we're zeroing in on, and that would be the pharmatech course, for example, correct? That's one, yeah, and that's an option. It's not something that you have to take to graduate high school, and I think that's what— You can add it to your credits to get out of high school. That's absolutely true. But you could certainly graduate high school without having to take any credits or pay any fees, and I think that that's the issue here. And what my colleagues and the appellate would like to have, the core rule, is that there can be no fees associated with school, and that certainly is not the holding in Polson. So it seems the main question here is whether this right that's been identified by the Idaho— by the Supreme Court in the Idaho Constitution is sufficient to rise to the level of a vested property right protected by the takings clause. Doesn't that seem to be the issue here? And you say no. No, I don't think it's a vested right for a lot of the reasons that Judge Tolman raised, but I think that it's not because these are not— Okay, I will address exactly what you're dealing with. I'm giving you the opportunity to tell us why it's not a vested property right within the takings clause. Yeah, okay. Well, it's not because education is one of those avenues where— I guess I'll cite Lynch v. United States, U.S. Railroad Retirement Board v. Fritz and United States v. Nordstrom that support the notion that public entitlements defined by the legislature, such as public education, cannot vest in the future as they're subject to legislative discretion. And the Idaho legislature's actions, including making kindergarten optional and revising such things as truancy laws, underscore this discretionary power. And thus, there can be no future rights either. Therefore, the appellants have no certain entitlement to items like the HOSA store goods, interstate ban travel. Well, how about this? If you need eight courses to graduate from high school in Idaho, the school board or the various educational authorities decide, but one of those courses you have to pay a fee to get in. Would that be a different situation? If it was a required course? If it was a required course. Absolutely. I need eight courses, but I can only take seven for free. I think that that would be a distinction that would apply if those were the facts in front of the court, and they're not. And that hasn't ever arisen in this case. And I don't believe that's the situation in Idaho schools as it is anyways. You said you agree with Judge Tallman here, but appellants argue that Judge Tallman misapprehended their money-based takings claim and that they're not alleged to have taken an education, but it's because there's money involved. What's your response to that? Well, two things. I think that you've got to look at both the per se theory and the exactions theory, and the essential question under the per se theory is referenced in Cedar Point Nursery versus Hacid, and it's whether they suffered a direct governmental-induced appropriation of a specific vested property interest. In this case, as previously explained, appellants had no vested property interest under the education law, nor do appellants allege any specific pool of money that they were entitled to was directly appropriated. Instead, appellants voluntarily engaged in the host of store goods, the CPR, the technical training, and the extracurricular band performances. This was all voluntary. It was not required by the school districts, and thus cannot constitute a per se taking. There's no taking of education that occurred here. Appellants received all the education that they desired. Their claims do not fit under that body of law. Under the exactions theory, the district court correctly recognized the appellants have not suffered an exaction. They point to Coons versus St. John's River Management District. An exaction claim is one where the government takes things without justification. The question is thus whether there was a justification for the money voluntarily used to pay these fees. Appellants have stated they received all the education they desired. Appellants voluntarily engaged in the courses and activities associated with those fees. They have not alleged fees that were charged were unreasonable or an improper revenue generating mechanism. The appellate districts have certified that they covered only the reasonable costs or actual costs of providing those services. And the Idaho Constitution does not forbid the setting of costs for extracurricular activities. A fee for optional services and courses thus cannot be deemed an illegal exaction. Ultimately, appellants were not charged for attending school. They were charged for extracurricular activities and services offered outside of or in addition to the mandatory minimums prescribed by the law. Thus, they cannot assert a takings claim. And for those reasons, we believe the court should affirm Judge Tolman's ruling. If I could just jump in, counsel, because it seems to me – and this is not a trick question. This may seem like a softball, but it's helping me try to understand this case better. Let's assume it's the worst case scenario. Let's assume a school said, you know what, if you want chemistry, you've got to pay for the chemicals. You've got to pay for the microscopes. Clearly a violation of Idaho law. It seems to me the cause of action there would be under the Idaho Education Code or the Idaho Constitution. Even under that terrible situation where they're making kids pay for the microscopes, I have trouble seeing how that's a federal taking. Again, this may be a softball question. Am I right to be suspicious of even if there's a violation of Idaho Education Law or the Idaho Constitution, how does that transform it into a federal takings claim? Yeah, I agree with you. I don't think it does, particularly because I think the Rodriguez case makes clear that there is no federal guarantee for education. I think that's the simple answer and the correct one. Do you want to talk at all about the district court revisiting the prior district court's order? Yeah, absolutely. The district court correctly exercised its discretion to request and grant a successive motion for summary judgment based on its finding that the prior conclusion of law were erroneous and worked manifest injustice. Under the federal rules of civil procedure, district courts wield broad procedural authority. They can modify interlocutory orders and grant summary judgment at any time. I guess my question is did the second district court judge, Judge Tallman, did he identify and apply the applicable standard? And if he didn't, what's the consequence of that? I'm not sure exactly what you're referring to. Well, there's Kastner and there's the Delta Savings Bank on which you would look to see whether or not, and granted it seems like there's some confusion by district courts out there on this, but that could have guided the decision. I'm not sure that was done here. And I guess I'm just giving you an opportunity to comment on that and see how that affects our decision. Fair enough. Your Honor, I don't recall the facts of those cases, to be fair, but I will say that the district court did reach out to all the parties, gave everybody an opportunity to brief the issue of whether or not a violation of the Idaho Constitution could result in a takings claim, and then he evaluated the law and determined its prior conclusions of law were not supported. And I think he found that it was more of a due process-oriented claim and that the rights did not ever vest, and that I think that all parties were allowed to participate in the adversarial process, and I don't think that there's any reversible error in the fact that Judge Tallman decided on his own to issue a decision that had not been necessarily argued by the parties. Okay. Any other questions? No. All right. Thank you. Thank you. Whether or not the particular fees at issue in this case violate the Idaho Constitution and the property right we allege, that's not an issue before this court. Judge Tallman did not reach that issue. Instead, he questioned, just what Your Honor, Judge Owens questioned, how can this constitutional provision create a property right, and he ruled that it did not, at least not under the takings clause. My answer to that is, and so a lot of this discussion, although interesting and marginally relevant, isn't particularly relevant to what's before the court today, which is, is there a property interest here protected by takings clause number one, due process clause number two? And the answer to the court's question about whether or not, how this creates a constitutionally protected property interest is, that's what constitutions, state statutes, and other things do. That's where property rights come from, and that's in Ninth Circuit case laws replete with it, as well as U.S. Supreme Court case law. And so because the court erred in doing that and raising this issue that without, you know, in deciding it based on arguments that were never made by any of the parties in a circumstance in which for four and a half years we had one district judge saying, yes, we have a property interest, and then as soon, within just a couple of months after that, a new judge comes in and says, oh, I don't think there is, and then comes to a conclusion based on arguments the parties have never raised, makes this case somewhat unique. And the parties, honestly, I don't feel like Judge Tallman ever really got a chance to hear these arguments. But is our review, because of the nature of it, a de novo review? Yes, Your Honor. So does it matter at this stage? Because now all the arguments are on the table and before us. That's a good point. And what I would say is yes. I think the court, especially with the appellant's reply brief and supplemental authority cited in our letter regarding the illegal exaction issue, which is a due process issue, because the respondents, the appellees in this case, have never raised the arguments before that they raised in their answering brief. That's an issue that we only had a chance to address in our exaction arguments, which is a different kind of exaction arguments than in the Ballinger case, if the court reviews those. That's the first time we ever had that opportunity. And so we kind of have new arguments that are being brought up for the first time ever because of the way that this law of the case was kind of disregarded by Judge Tallman. And so if the court can, definitely has, I think, authority under its de novo review based upon the factual record before it to make a decision. But because of the way in which it has been presented to the court, because of this failure to follow the law of the case and then entirely new argument being made by the appellees in this case, I think it puts the court in a difficult position as to does it have everything it needs. I think probably the best way to handle this, if the court is at all disinclined to reverse, would be on the substantive grounds to reverse based upon the law of the case and let the parties present these issues that they never got to really address in front of the district court. You mean basically just remand? Just remand for further proceedings. Thank you very much. Thank you, Your Honors. Thank you, Mr. Wood. Mr. Stoll, I appreciate your oral argument presentations here today. The case of Mike Zion v. Bonneville Joint School District is now submitted. And we are adjourned. Thank you.
judges: MURGUIA, McKEOWN, OWENS